UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL JEWISH DEMOCRATIC
COUNCIL and MARC R. STANLEY,
                              Plaintiffs,

                    -v-

SHELDON G. ADELSON,
                              Defendant.

18-CV-8787 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This case arises out of a prior defamation suit filed by Sheldon G. Adelson against the

National Jewish Democratic Council and its chair, Marc R. Stanley.  This Court dismissed the

suit under Nevada law for being a so-called "SLAPP" — a strategic lawsuit against public

participation.  The Council and Stanley now seek compensatory and punitive damages for the

prior suit, as well as attorney's fees for this separate action.  They have moved for partial

summary judgment on the issue of liability.  Adelson, on the other hand, has moved to dismiss

under both Rule 12(b)(6) and Nevada's anti-SLAPP statute.

For the reasons that follow, Adelson's motions to dismiss are denied.  Plaintiffs' motion

for summary judgment is granted, but only on the issue of liability for compensatory damages

and attorney's fees.

I.      **Background**

Unless otherwise indicated, the following facts are undisputed.

Defendant Sheldon G. Adelson is a prominent businessperson.  (*See* Dkt. No. 15

("Compl.") ¶¶ 10, 21.)  He is also the chairman and CEO of Las Vegas Sands Corporation,

which owns and operates casinos throughout the world.  (*See* Compl. ¶ 10.)  During the 2012

presidential election cycle, Adelson provided financial support to various Republican candidates. (Compl. ¶ 21.)

Plaintiff National Jewish Democratic Council is a 501(c)(4) nonprofit organization whose goal is to maximize Jewish support for Democratic candidates. (Compl. ¶ 26.) Its chair is Plaintiff Marc R. Stanley. (Compl. ¶ 5.) In July 2012, during the presidential campaign, the Council published a statement on its website that encouraged Mitt Romney to stop accepting money from Adelson. (*See* Compl. ¶ 28.) The statement included the allegation, taken from news sources, that Adelson "personally approved" of prostitution in his Macau casinos. (*Id.*)

In response, Adelson sued the Council, Stanley, and David Harris (the Council's CEO) for defamation. The defendants moved to dismiss under Nevada's anti–strategic lawsuit against public participation ("anti-SLAPP") statute. This Court granted the motion to dismiss and awarded attorney's fees and costs to the defendants. *See Adelson v. Harris*, 973 F. Supp. 2d 467, 504 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413, 415 (2d Cir. 2017).

Plaintiffs Stanley and the Council now bring this action for damages. Under Nevada law, a litigant who succeeds on a motion to dismiss under Nevada's anti-SLAPP statute "may bring a separate action to recover: (1) [c]ompensatory damages; (2) [p]unitive damages; and (3) [a]ttorney's fees and costs of bringing the separate action." Nev. Rev. Stat. § 41.670(1)(c). Accordingly, Plaintiffs have moved for partial summary judgment on the issue of liability.

Defendant Adelson has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). He has also moved to dismiss under Nevada's anti-SLAPP statute, arguing that his original lawsuit was protected conduct under the statute. For the reasons that follow, both of Adelson's motions to dismiss are denied. Plaintiffs' motion for summary judgment is granted on the issue

of liability for compensatory damages and attorney's fees and denied on the issue of liability for

punitive damages.

## II.     Legal Standards

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient

factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the well-pleaded factual allegations

of the complaint, presumed true, permit the court to "draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)

(citing *Twombly*, 550 U.S. at 556).

Summary judgment under Rule 56 is appropriate when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.

A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the

record as a whole, a rational jury could find in favor of the nonmoving party, *Ricci v. DeStefano*,

557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)).

Nevada's anti-SLAPP statute takes aim at strategic lawsuits against public participation,

or SLAPPs, which "abuse the judicial process by chilling, intimidating, and punishing

individuals for their involvement in public affairs."  *John v. Douglas Cty. Sch. Dist.*, 219 P.3d

1276, 1281 (Nev. 2009).  In applicable cases, defendants may file a "special motion to dismiss,"

Nev. Rev. Stat. § 41.660(1)(a), which permits defendants to obtain dismissal of meritless actions

without the time and expense of discovery.  This motion bears a close resemblance to a motion

for summary judgment: under the statute, a defendant obtains dismissal only if the plaintiff has

failed to "demonstrate[] with prima facie evidence a probability of prevailing on the claim." *Id.*
§ 41.660(3)(b).

## III.   Discussion

Defendant Adelson has moved to dismiss under Rule 12(b)(6) and under Nevada's anti-
SLAPP statute.  Plaintiffs have moved for partial summary judgment.

### A.   Adelson's Motion to Dismiss under Rule 12(b)(6)

Adelson first moves for dismissal under Rule 12(b)(6).  His principal contention is that
Nevada's anti-SLAPP law is inapplicable in this lawsuit, both because its application would
violate the Supremacy Clause and because its application would violate New York's
choice-of-law rules.  In addition, he argues that plaintiffs have straightforwardly failed to state a
claim under the anti-SLAPP law.

#### 1.   Supremacy Clause

The Supremacy Clause provides that the Constitution and laws of the United States "shall
be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  Under the Clause, "the states have
no power . . . to retard, impede, burden, or in any manner control, the . . . execution [of] the
powers vested in the [federal] government."  *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316,
436 (1819).  The Supremacy Clause has direct implications for the structural relationship
between the states and the federal courts.  For example, where Congress has provided for federal
jurisdiction — and has therefore granted the right to sue in federal court — the states are
"without power to take away this federal right" by "punish[ing] . . . a federal-court litigant for
pursuing his right to federal-court remedies."  *Donovan v. City of Dallas*, 377 U.S. 408, 413–14
(1964).  A state court, then, lacks the authority to hold a litigant in contempt for bringing an
action in federal court.  *See id.* at 414.  More generally, any "state action, whether legislative or
executive, necessarily calculated to curtail the free exercise of the right [to a federal forum] is

void." *Terral v. Burke Const. Co.*, 257 U.S. 529, 532 (1922); *cf. Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1871).

Adelson argues that the imposition of liability under Nevada's anti-SLAPP statute would be unconstitutional because it would infringe his right to a federal forum. He argues that Nevada's anti-SLAPP statute "punishes" a plaintiff for bringing federal litigation by awarding compensatory and punitive damages to a defendant who has successfully obtained dismissal. *See* Nev. Rev. Stat. § 41.670(1)(c); Dkt. No. 17 at 10–11.

This argument is fundamentally flawed. Simply put, it does not violate the Supremacy Clause for a federal court sitting in diversity to apply state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Adelson's original action was a claim under Nevada law for defamation. *See Adelson*, 973 F. Supp. 2d at 481. And in Nevada, if the defendant in a state-law defamation suit obtains dismissal under the state's anti-SLAPP statute, the defendant is entitled to compensatory and punitive damages. *See* Nev. Rev. Stat. § 41.670(1)(c). There is no doubt that the statute's damages provision — like its fee-shifting provision, *see Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) — is substantive in nature. Thus, a federal court sitting in diversity *must* apply it. *See Erie*, 304 U.S. at 78 ("[T]he law to be applied in any case is the law of the state."). In light of that command, it is difficult to understand Adelson's objection. How can that which is commanded by *Erie* fall afoul of the Supremacy Clause?[1]

---

[1] One could imagine a Supremacy Clause problem if Nevada's anti-SLAPP provisions were applied — outside *Erie*'s domain — to a *federal* cause of action. *Cf. Martinez v. California*, 444 U.S. 277, 284 (1980) ("It is clear that the California immunity statute does not control this [federal § 1983] claim . . . ."). But that is not the case here. Nor could it be: anti-SLAPP statutes do not apply to federal causes of action. *See, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[T]he anti-SLAPP statute does not apply to federal law causes of action."); *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 366 (S.D.N.Y. 2010) ("[F]ederal courts have [generally] declined to apply [a]nti-SLAPP statutes to federal claims.").

On this point, it is instructive to compare the anti-SLAPP statute's damages provision, *see* Nev. Rev. Stat. § 41.670(1)(c), with the neighboring provision requiring fee shifting, *see id.* § 41.670(1)(a). The two provisions are, in substance, identical. In the event of a successful anti-SLAPP dismissal, section 41.670(1)(a) authorizes the award of attorney's fees to the prevailing party, while section 41.670(1)(c) authorizes the award of compensatory and punitive damages to the prevailing party. Both provisions "punish" a litigant for bringing a lawsuit in violation of the anti-SLAPP statute.[2] Thus, in the face of a Supremacy Clause challenge, the two provisions must rise or fall together. And there is no question that the fee-shifting provision "unproblematic[ally]" applies in federal court. *Adelson*, 774 F.3d at 809. As the Second Circuit categorically stated in *Adelson v. Harris*, "[a]ttorneys fees mandated by state statute are available when a federal court sits in diversity," *id.* (quoting *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993)), because the provision "would apply in state court had suit been filed there" and "is substantive within the meaning of *Erie*." *Id.* So, too, for the damages provision.

As support for his Supremacy Clause objection, Adelson cites three bodies of case law, but none is apposite. The first body of law governs the constitutionality of state laws that discriminate against federal litigation. (*See* Dkt. No. 17 at 10–11.) In *Terral v. Burke*

---

[2] The only distinction? The award of attorney's fees accompanies the initial dismissal, *see id.* § 41.670(1)(a), whereas the award of damages occurs in "a separate action" brought after the initial dismissal, *id.* § 41.670(1)(c). For purposes of the Supremacy Clause, however, that distinction is without a difference. The right to a federal forum is impermissibly "burden[ed]" irrespective of precisely when the state "seek[s] to exact a cost after the [exercise of the right] occurs." *Citizens United v. FEC*, 558 U.S. 310, 337 (2010).

Adelson attempts another distinction — between "the mere shifting of attorney's fees" and "the threat of [civil] liability, [which] far more significantly chills" the right to bring a lawsuit. (Dkt. No. 24 at 10 (first alteration in original) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014).) But that distinction, too, melts into air. The Supremacy Clause condemns all attempts to "curtail the free exercise of the right [to a federal forum]." *Terral*, 257 U.S. at 532.

*Construction Co.*, for example, Arkansas had enacted a statute revoking any corporation's license to do business in the state if the corporation "institute[d] any suit or proceeding against [a] citizen of [Arkansas] in any federal court."  257 U.S. at 531.  The Supreme Court invalidated the statute on the ground that it violated "the federal constitutional right of [litigants] to resort to the federal courts."  *Id.* at 532.  The Court concluded "that state action, whether legislative or executive, necessarily calculated to curtail the free exercise of the right [to a federal court] is void."  *Id.*  This case, however, is nothing of the sort.  In no sense is Nevada's anti-SLAPP law "calculated" to discourage Adelson's use of a federal, rather than a state, forum.  *Id.*  *Terral* and its progeny are therefore inapposite.

The second body of law concerns the power of state courts to enjoin federal proceedings. (*See* Dkt. No. 17 at 11.)  In *Donovan v. City of Dallas*, the Supreme Court invalidated a state court injunction that prohibited litigants from pressing a pending lawsuit in federal court after losing a nearly identical lawsuit in the state court.  *See* 377 U.S. at 413.  Similarly, in *General Atomic Co. v. Felter*, 434 U.S. 12 (1977) (per curiam), the Supreme Court invalidated a state court injunction that prohibited the litigant from filing or prosecuting future lawsuits in federal court, *id.* at 18.  Both cases stand for the "well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions."  *Donovan*, 377 U.S. at 412–13 (footnote omitted).  But neither case has anything to say about the power (or obligations) of *federal* courts.  And neither case gainsays the obligation of federal courts under *Erie* to apply state substantive law in diversity cases.

The third body of law concerns the torts of malicious prosecution and abuse of process. A fundamental problem for Adelson's position is that federal courts have readily imposed state-law tort liability on litigants bringing abusive or meritless claims in federal court.  *See, e.g.*,

*U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 393 (3d Cir. 2002) (holding that "victims" of "misconduct in federal litigation" "may, in appropriate circumstances, bring suit to recover damages under state causes of action" for "abuse of process and similar torts").  These cases simply cannot be read to cohere with Adelson's interpretation of the Supremacy Clause.  Thus, Adelson essentially argues that these cases were wrongly decided, citing two cases in which federal courts refused to impose state-law liability for legal misconduct in federal litigation.  (*See* Dkt. No. 24 at 10 (citing *Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987); *Nationwide Charters & Conventions, Inc. v. Garber*, 254 F. Supp. 85 (D. Mass. 1966)).)  Both of those cases, however, involved *federal* causes of action.  *See Gonzales*, 830 F.2d at 1036 (federal bankruptcy law); *Garber*, 254 F. Supp. at 86 (federal aviation law).  And, again, while one could imagine a Supremacy Clause problem if the anti-SLAPP statute's damages provision were applied to a federal cause of action, *supra* at 5 n.1, this case implicates only Nevada defamation law.  Thus, Adelson's citations to *Gonzales* and *Garber* miss the mark.[3]

In short, Adelson — by invoking this Court's diversity jurisdiction — must take Nevada law as he finds it.  The anti-SLAPP statute's damages provision, much like its requirement of dismissal or its fee-shifting provision, is part of the substantive law of Nevada.  This Court works no injury to the supremacy of federal law by applying it.

---

[3] Admittedly, the district court's reasoning in *Garber* sweeps more broadly.  Its assertion that "it is a federal question whether or not there has been an abuse of process of a federal court" would likely preempt *all* state-law causes of action for abusive litigation filed in federal court. 254 F. Supp. at 87.  Perhaps for that reason, *Garber*, "a more than fifty-year-old case" that applies "an approach [to federal common law that] is improper today," has been flatly deemed "not persuasive."  *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222, 240 n.8 (S.D.N.Y. 2018).

2.      **Choice of Law**

Adelson's Rule 12(b)(6) motion also argues that application of the anti-SLAPP statute's damages provision is inconsistent with New York's choice-of-law rules.  (*See* Dkt. No. 17 at 8–16.)  Although Adelson acknowledges that his previous suit for defamation was properly governed by Nevada law, he argues that this subsequent action for damages "is a different lawsuit . . . raising a different claim" that is thus "governed by the law of [New York]."  (Dkt. No. 17 at 15.)

This Court sits in New York and therefore applies New York's choice-of-law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation."  *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (1994).  If the conflict involves a rule that is "conduct-regulating," the law of the place of the tort generally governs.  *Id.* at 522.  If the conflict involves a rule that is "loss allocating," however, the choice of law is governed by the principles articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972).

An antecedent issue, however, is the exact nature of Plaintiffs' entitlement to relief. Plaintiffs argue that this action is a "continuation" of the prior case and that their right to recovery does not turn on an independent choice-of-law analysis.  (Dkt. No. 21 at 19, 23.) Adelson disagrees, arguing that the compensatory and punitive damages provisions of Nevada's anti-SLAPP statute are conceptually distinct from the prior suit for defamation.  (Dkt. No. 17 at 14.)

Adelson's argument relies on the doctrine of depecage, under which "the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues."  *Fieger v. Pitney Bowes Credit Corp.*, 251

F.3d 386, 397 n.1 (2d Cir. 2001) (quoting *Hutner v. Greene*, 734 F.2d 896, 901 (2d Cir. 1984)). Under the doctrine of depecage, Adelson argues, Nevada law governs the availability of the anti-SLAPP dismissal and the award of attorney's fees, but New York law governs the availability of compensatory and punitive damages.  (Dkt. No. 17 at 15–16.)

Depecage, however, has no application to the compensatory damages provision.  "[T]he question of the proper measure of damages is inseparably connected with the right of action" — especially when the right to recovery is a "creature[] of statute."  *Davenport v. Webb*, 11 N.Y.2d 392, 393 (1962) (quoting *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 491 (1916)).  The right and remedy in such cases have "coalesced" and are "united."  *Id.* (quoting *Matter of Berkowitz v. Arbib & Houlberg, Inc.*, 230 N.Y. 261, 272 (1921)).  In that sense, the statute's compensatory damages provision is no different from the provision shifting attorney's fees. Much like the plaintiffs' claim for compensatory damages, "a proceeding for an award of attorneys' fees is not a [separate] suit; it is a tail dangling from a suit."  *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 965 (7th Cir. 2010) (Posner, J.).  Thus, neither the compensatory damages provision nor the fee-shifting provision occasions a separate choice-of-law analysis.

The punitive damages provision is a different story.  "Although it is clear that the measure of compensatory damages is determined by the same law under which the cause of action arises, this is not necessarily true with regard to [punitive] damages."  *James v. Powell*, 19 N.Y.2d 249, 259 (1967) (citations omitted).  Under the doctrine of depecage, then, the choice-of-law analysis for punitive damages is distinct from the analysis for compensatory damages.

Punitive damages are conduct regulating.  *See, e.g.*, *In re September 11th Litigation*, 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007).  As a general mater, then, the law of the place of the tort governs unless there is good reason not to apply the rule of *lex loci delicti*.  *See id.*  But under New York law — for punitive damages in particular — a court must consider "the *object or purpose* of the wrongdoing" to be punished and give controlling weight to the "law of the jurisdiction with the strongest interest in the resolution of the particular issue presented."  *James*, 19 N.Y.2d at 259 (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 484 (1963)); *see Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F. Supp. 1518, 1528 (S.D.N.Y. 1986) (finding that "interest analysis" applies when determining which state's punitive damages regime should govern).

Here, "the particular wrong which would serve as a predicate for punitive damages," *James*, 19 N.Y.2d at 260, is the filing of a SLAPP, a "meritless suit filed primarily to chill the defendant's exercise of First Amendment Rights," *John*, 219 P.3d at 1280 (internal quotation marks omitted).  In such cases, Nevada has a strong interest in ensuring the application of its punitive damages provision.  Because the litigant has attempted to use Nevada's defamation law to chill First Amendment rights, Nevada has a corresponding interest in punishing the litigant for maliciously invoking Nevada law and in deterring future litigants from doing the same.  *See Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198 (1985).  And of course, Adelson — the litigant in question — is a domiciliary of Nevada.  (Compl. ¶ 6.)  That, too, points in favor of applying Nevada law.  Punitive damages are designed to punish the defendant, not to compensate the plaintiff, and so the choice-of-law inquiry for punitive damages provisions is necessarily "defendant-focused."  *Golden v. Wyeth, Inc.*, No. 4-CV-2841, 2013 WL 4500879, at *3 (E.D.N.Y. Aug. 20, 2013); *cf. Dobelle*, 628 F. Supp. at 1529 ("[T]he interest of plaintiff's

domicile has little relevance since punitive damages are designed to punish a defendant, not to compensate a plaintiff.").

New York's interest, on the other hand, is relatively attenuated.  Its sole connection to this suit is that the suit was filed here.  (*See* Dkt. No. 17 at 14.)  True, that connection would vest New York with a vigorous interest in this case if the offending lawsuit were filed in state court. *Cf. Tripodi v. Local Union No. 38, Sheet Metal Workers' Int'l Ass'n*, 120 F. Supp. 2d 318, 321 (S.D.N.Y. 2000) ("[T]he paramount interest in cases involving the torts of malicious prosecution and abuse of process is that of the state whose courts were allegedly abused.").  But here, Adelson filed his lawsuit in *federal* court under *Nevada* defamation law.  Thus, New York's relationship with the case is, at best, "adventitious." *Babcock*, 12 N.Y.2d at 482.  After all, New York lacks a particularized interest either in "protect[ing] defendants from liability[]" under Nevada defamation law or in "control[ling] [the] behavior" of litigants who file in the federal courts. *Dobelle*, 628 F. Supp. at 1529 (quoting *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 615 (7th Cir. 1981)).  And where the locus jurisdiction has a "merely fortuitous" relationship with the case, that jurisdiction's interest in the case is "minimal." *Id.* at 1529.

In response, Adelson argues that the damages provisions are better understood as analogues to the common law torts of malicious prosecution and abuse of process.  (Dkt. No. 17 at 14.)  For those torts, he argues, "the general rule in such actions is that the governing law is that of the state where the proceeding complained of took place." *Tripodi*, 120 F. Supp. 2d at 321; *see* Restatement (Second) of Conflicts of Laws § 155.  By analogy, Adelson concludes, the *lex loci delicti* rule should perforce apply here as well.

This argument mistakes a mere label for legal analysis.  Even if the right to recover under Nevada law were correctly labeled a cause of action akin to malicious prosecution or abuse of

process, the underlying choice-of-law analysis would remain unchanged.  Even for those torts, "[t]he rights and liabilities . . . are determined by the local law of the state where the proceeding complained of occurred, *unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied*."  Restatement (Second) of Conflict of Laws § 155 (emphasis added). And here, for the reasons already adduced, Nevada has a more significant relationship to the parties and to the original defamation suit.

Accordingly, consistent with New York's choice-of-law rules, Nevada defamation law governs this action for damages.[4]

### 3.    Failure to Plead "Objective Baselessness"

Finally, Adelson's Rule 12(b)(6) motion argues that Plaintiffs have failed to state a claim under the anti-SLAPP statute's damages provision.  Specifically, Adelson argues that the Nevada statute does not permit recovery unless the claimant has demonstrated that the original lawsuit was "objectively baseless."  (Dkt. No. 17 at 16.)  Because Plaintiffs have not alleged that the prior suit satisfies this test, Adelson argues, he is entitled to dismissal.  (*See id.*)

The resolution of this issue requires an *Erie* prediction.  "In determining the meaning of state law, [a federal court] must carefully predict how the state's highest court would rule if confronted with the issue, including how it would resolve any ambiguity in the statute."  *KLC, Inc. v. Trayner*, 426 F.3d 172, 175–76 (2d Cir. 2005).  In doing so, this Court "consider[s] all sources available to that court," applying "traditional tools of statutory interpretation."  *Id.*

---

[4] Because the choice-of-law analysis indicates that Nevada law governs, this Court does not address Plaintiffs' additional argument that Adelson is collaterally estopped from arguing that New York law governs.  (Dkt. No. 21 at 18–21.)

The "objectively baseless" standard proposed by Adelson appears nowhere in the anti-SLAPP statute.  The statute provides only that "[i]f the court grants a special motion to dismiss filed pursuant to [the anti-SLAPP statute]: . . . [t]he person against whom the action is brought may bring a separate action to recover: (1) [c]ompensatory damages; (2) [p]unitive damages; and (3) [a]ttorney's fees and costs of bringing the separate action."  Nev. Rev. Stat. § 41.670(1)(c).  Under Nevada law, "a plain and unambiguous statute" is interpreted "according to its ordinary meaning."  *Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013).  And here, the text of the statute is plain: the one and only legal precondition to a defendant's ability to bring a separate action is the district court's grant of a special motion to dismiss.[5]

Context only reinforces text.  A neighboring provision provides the corresponding remedial rule if the district court denies the anti-SLAPP motion: "[i]f the court denies a special motion to dismiss . . . *and finds that the motion was frivolous or vexatious*, the court shall award to the prevailing party reasonable costs and attorney's fees."  Nev. Rev. Stat. § 41.670(2) (emphasis added).  The presence of this limiting language in section 41.670(2) strongly suggests that the absence of similar limiting language in section 41.670(1) was intentional.  *Expressio unius est exclusio alterius* — especially when the two provisions at issue are vicinal.  *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

Adelson justifies his proposed departure from statutory text on various grounds.  None of them has merit.  The first is that the anti-SLAPP statute should be interpreted against the backdrop of the common law, which includes the tort of malicious prosecution.  (Dkt. No. 17 at

---

[5] Adelson argues that there is a fundamental distinction between "the existence of a cause of action" and "the elements of the resulting legal claim."  (Dkt. No. 24 at 14.)  Of course.  But the elements of a statutory cause of action are ascertained by interpreting the text of the statute.  And here, the text of the statute plainly does not include the "objectively baseless" standard urged by Adelson.

17.)  In Nevada, in order to state a claim for malicious prosecution, a plaintiff must show "a lack

of probable cause to commence the prior action."  *Dutt v. Kremp*, 894 P.2d 354, 357 (Nev.

1995).  Citing the canon that statutes derogating from the common law should be strictly

construed, Adelson argues that a similar requirement — namely, that the original lawsuit be

"objectively baseless" — should apply to the availability of damages.  (Dkt. No. 17 at 17.)  But

the derogation canon does no work when the statute in question is unambiguous.  Rather, even

for statutes "in derogation of the common law," the court must give effect to "clear and

unequivocal language."  *Mulford v. Davey*, 186 P.2d 360, 362 (Nev. 1947) (quoting *Nevada*

*Cornell Silver Mines v. Hankins*, 279 P. 2731 (Nev. 1929)).  And here, the statute clearly and

unequivocally places no legal precondition on the availability of damages.[6]

    Adelson's second argument is that California's anti-SLAPP statute requires "the same

showing of objective unreasonableness as an ordinary malicious-prosecution plaintiff" before a

litigant can recover damages.  (Dkt. No. 17 at 17.)  California's anti-SLAPP regime is relevant

here "because California's anti-SLAPP statute is similar in purpose and language to Nevada's

---

[6] Adelson also suggests that the Court should interpret the Nevada statute to cohere with the common-law tort of malicious prosecution because Plaintiffs' claims would otherwise be untimely.  (Dkt. No. 24 at 15.)  Nevada law establishes a three-year statute of limitations period for any "action upon a liability created by statute."  Nev. Rev. Stat. § 11.190(3).  Adelson argues that Plaintiffs' cause of action accrued on the date of this Court's grant of the special motion to dismiss on September 30, 2013, which would render this suit untimely.  In contrast, a claim for malicious prosecution does not accrue until all appeals have been exhausted.  *See* Restatement (Second) of Torts § 674 cmt. j.  Thus, to ensure that their claim was filed within the statute of limitations period, Adelson argues, Plaintiffs' must concede that the anti-SLAPP statute "incorporates *all* the elements of malicious prosecution[,] [including] the element of objective baselessness."  (Dkt. No. 24 at 16.)

    Plaintiffs' claims are timely.  A claim under Nevada's anti-SLAPP statute, like a claim for malicious prosecution, accrues only after all appeals are exhausted.  (After all, Plaintiffs' claims in this case would presumably encompass compensation for any harms suffered as a result of Adelson's appeal to the Second Circuit.)  But — *contra* Adelson — there are no obvious implications for the substantive standard of liability under the anti-SLAPP statute, which is a conceptually unrelated question.

anti-SLAPP statute." *John*, 219 P.3d at 1283.  But, of course, whenever California's statute is *dissimilar* in language, the metes and bounds of its anti-SLAPP jurisprudence become irrelevant. And on this precise point, the text of California's anti-SLAPP law differs crucially from Nevada's.  Unlike the Nevada statute, California's statute does not provide for an independent right to collect damages in the event of a successful motion to dismiss.  Rather, the statute permits a successful litigant to collect damages only via a "cause of action for malicious prosecution or abuse of process."  Cal. Civ. Proc. Code § 425.18(b)(1).  It is no surprise, then, that California requires a prevailing anti-SLAPP litigant to make "the same showing . . . as an ordinary malicious-prosecution plaintiff" (Dkt. No. 17 at 17).  But the implications for Nevada's anti-SLAPP law are nonexistent.

Adelson next argues that an "objectively baseless" standard would comport with one of the principal purposes of Nevada's statute, which is to protect the right to petition the courts. (Dkt No. 17 at 13.)  Because the Nevada statute "protects the right to file lawsuits" (*id.*), Adelson contends, the statute should not be read to punish litigants who file objectively reasonable lawsuits.  This argument raises a congeries of problems.  The first should be familiar to any votary of modern theories of statutory interpretation: "When the text of a statute is plain and unambiguous, a court should impart it with ordinary meaning and not go beyond that meaning." *Star Ins. Co. v. Neighbors*, 138 P.3d 507, 510 (Nev. 2006).  Nevada's anti-SLAPP statute is unambiguous; thus, arguments about its purpose knock at the wrong door.

The second problem is immanent to Adelson's argument.  Even if the Nevada statute were ambiguous, Adelson's characterization of its purpose proves far too much.  Consider the statute's fee-shifting provision, which awards attorney's fees to any litigant who successfully obtains an anti-SLAPP dismissal.  *See id.* § 41.670(1)(a).  Like the damages provision, its text

imposes no additional precondition for obtaining a fee award.  But Adelson's argument would justify reading an "objectively baseless" standard into the attorney's fee provision as well.  After all, interpreting the statute to subject a litigant to fee shifting, "even for objectively reasonable efforts to petition through litigation," would also "contradict th[e] statutory purpose" as articulated by Adelson.  (Dkt. No. 17 at 18.)  Tellingly, however, this Court has not read the fee-shifting provision to incorporate a heightened standard.  *See Adelson*, 973 F. Supp. 2d at 504. The damages provision is no different.  Rather than rewrite clear statutory text to accord with nebulous statutory purpose, this Court opts to apply the damages provision as written.

Finally, Adelson turns to the Constitution.  He argues that the Nevada statute must be read to incorporate an "objectively baseless" standard because such a construction would avoid the constitutional problem presented by a state law that subjects a litigant to civil liability for an objectively reasonable effort to litigate.  (Dkt. No. 17 at 19.)  But that is not how the canon of constitutional avoidance works.  "[A] court relying on [the] canon [of constitutional avoidance] must *interpret* the statute, not rewrite it."  *Degraw v. Eighth Judicial District Court*, 419 P.3d 136, 139 (Nev. 2018) (en banc) (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018)).  As Adelson himself recognizes, nothing in section 41.670 — which is "silent" on the necessity of a heightened legal standard (Dkt. No. 17 at 16) — even hints that a litigant must demonstrate objective baselessness in order to be awarded damages.  Reading that statutory silence to incorporate an "objectively baseless" standard, then, would "reach[] far beyond interpreting [the statute]" and would require this Court "to engage in policy making to rewrite the statute." *Degraw*, 419 P.3d at 139.  That is the prerogative of the Nevada legislature, not this Court.

Adelson's appeal to antitrust petitioning immunity under the *Noerr-Pennington* doctrine is similarly misguided.  (*See* Dkt. No. 17 at 19–21.)  Under the *Noerr-Pennington* doctrine —

established by *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965) — defendants are generally immune from antitrust liability for engaging in litigation, even if the litigation might have anticompetitive effects. Under *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (*PRE*), 508 U.S. 49 (1993), an exception to *Noerr-Pennington* immunity exists if the litigation is "a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." *Id.* at 51. As defined by the Court in *PRE*, litigation is a "sham" if it is "objectively baseless" and brought in bad faith. *Id.* at 60–61.

Adelson reads the *Noerr-Pennington* line of cases broadly to disable the government from subjecting any litigant to liability for an "objectively reasonable effort to litigate." (Dkt. No. 17 at 19.) In other words, Adelson would have the Court read *PRE*'s "objectively baseless" standard into Nevada's anti-SLAPP damages provision. But the Supreme Court has cautioned that the *PRE* standard is a "doctrine of antitrust law" and that its holding is firmly grounded in the "text" of the Sherman Act and the "context" of antitrust liability. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). This admonition against mission creep applies here in full. Because "the *PRE* standard finds no roots in the text of" the Nevada statute or the "context" of anti-SLAPP liability, it would make "little sense" to import the *PRE* standard into section 41.670. *Id.*[7]

---

[7] Adelson argues that even if the *Noerr-Pennington* doctrine is an antitrust doctrine, it remains "relevant outside the context of antitrust actions." (Dkt. No. 17 at 20 (quoting *FORSA v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004)). The doctrine does not, however, give this Court license to ignore clear statutory text. The Supreme Court's most recent pronouncement on the subject makes plain that the *Noerr-Pennington* doctrine applies only if it "finds . . . roots in the text of" the statute at issue. *Octane Fitness*, 572 U.S. at 556. Where, as here, the text of the statute is "patently clear" and "imposes one and only one constraint on district courts' discretion" (here, successful dismissal under the anti-SLAPP statute), the doctrine has no application. *Id.* at 553.

This Court concludes that Nevada's anti-SLAPP statute does not incorporate an "objective baselessness" requirement as a precondition to a separate action for damages. Adelson's motion to dismiss under Rule 12(b)(6) is denied.

### B.    Adelson's Motion to Dismiss under Nevada's Anti-SLAPP Statute

Adelson next moves for dismissal under Nevada's anti-SLAPP law.  He puckishly avers that his initial defamation suit — even though it was dismissed as a SLAPP — was itself protected conduct under the anti-SLAPP statute.  He therefore argues that he is entitled to dismissal of this damages suit because it, too, qualifies as a SLAPP.  (*See* Dkt. No. 28 at 6–9.) Adelson's argument turns on the proper construction of the Nevada statute, which is governed by *Erie*.  *See, e.g.*, *KLC*, 426 F.3d at 175–76.

Under Nevada's anti-SLAPP regime, a district court must follow a two-step process to determine how to rule on an anti-SLAPP motion.  First, the court must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."  Nev. Rev. Stat. § 41.660(3)(a).  If so, then the burden shifts to the plaintiff and the court must "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim."  *Id.* § 41.660(3)(b).  The "prima facie evidence" inquiry on this second step is akin to the summary judgment standard.  *See Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019); *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016).

The first question, then, is whether this damages suit qualifies as a "SLAPP" under the Nevada statute.  The statute defines a SLAPP to mean "an action . . . brought against a person based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."  *Id.* § 41.660(1).  Recall that this

suit was brought under the statute's damages provision, which provides that a litigant who successfully obtains dismissal of a SLAPP "may bring a separate action to recover: (1) [c]ompensatory damages; (2) [p]unitive damages; and (3) [a]ttorney's fees and costs of bringing the separate action."  Nev. Rev. Stat. § 41.670(1)(c).

Under Adelson's reading of these two provisions, any anti-SLAPP damages action can itself qualify as a SLAPP if the previously dismissed SLAPP was a "good faith communication" — i.e., if the previous suit was not "objectively baseless."  (Dkt. No. 30 at 6.)  This interpretation of the statute, however, creates an oddity.  It would be peculiar, to say the least, if Nevada wrote its anti-SLAPP statute to shield litigants who file SLAPPs from liability in a subsequent anti-SLAPP damages action.  The twin aims of the statute are to protect defendants from litigation costs and to deter plaintiffs from bringing SLAPP claims.  *John*, 219 P.3d at 1281.  Those compensatory and deterrent purposes would be substantially undermined if the statute's damages provision applied only to the subset of SLAPP lawsuits that could be demonstrated to be objectively unreasonable or brought in subjective bad faith.

Nevertheless, this Court need not decide whether Adelson has correctly interpreted the statute.  Even if anti-SLAPP damages actions, as a general matter, can qualify as SLAPPs under Nevada law, Adelson has not met his burden to show that this particular action qualifies as a SLAPP.  At the first step of the anti-SLAPP analysis, the defendant must "establish[], by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."  Nev. Rev. Stat. § 41.660(3)(a).  "Therefore, when a party moves for a special motion to dismiss under Nevada's anti-SLAPP statute, it bears the initial burden of production and persuasion."  *John*, 219 P.3d at 1282.

Adelson has not even attempted to meet his burden of production. For example, in order to establish that the communication was made in "good faith," the movant must provide evidence that the communication was "truthful or . . . made without knowledge of its falsehood." Nev. Rev. Stat. § 41.637. But Adelson has not provided any evidence whatsoever — "written or oral, by witnesses or affidavits," *id.* § 41.660(d) — that the allegations in his initial lawsuit were truthful or brought without knowledge of their falsehood.[8] Thus, Adelson has failed to demonstrate that his initial lawsuit was a "good faith" communication. Because he has failed this threshold showing, Adelson's special motion to dismiss is denied.

### C.   Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs, in turn, have moved for partial summary judgment on the issue of liability. They argue that none of the material facts are in dispute and that Adelson is, as a matter of law, liable to them for compensatory and punitive damages, as well as attorney's fees for this separate action, under Nevada's anti-SLAPP statute.

Ordinarily, a motion for summary judgment filed at this stage of litigation would be unseasonable. "Although [Rule 56] allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." Fed. R. Civ. P. 56(b) advisory committee's note to 2010 amendment. But courts in this circuit have granted preanswer motions for summary judgment, *see W.P. Carey, Inc. v. Bigler*, 2019 WL

---

[8] Adelson's brief argues he has met his burden because the "Complaint never claims that Mr. Adelson's factual allegations were false . . . [or] made without knowledge of their falsehood." (Dkt. No. 28 at 8.) This gets it exactly backward. As the movant, Adelson "bears the initial burden of production and persuasion" to show "that the lawsuit is based on [a] good faith communication[]." *John*, 219 P.3d at 754 (internal quotation marks omitted).

1382898, at *12 (S.D.N.Y. Mar. 27, 2019) (collecting cases) — albeit "[o]nly in the rarest of cases," *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

This is one of those cases, at least on the issue of Adelson's liability for compensatory damages and attorney's fees.  Under Nevada's anti-SLAPP statute, the sole precondition to a defendant's entitlement to compensatory damages and attorney's fees is the district court's grant of a special motion to dismiss.  *See* Nev. Rev. Stat. § 41.670(1)(c).  In this case, consistent with Local Civil Rule 56.1, Plaintiffs have filed a statement of undisputed facts, including the proffered fact that "[t]his Court granted a special motion to dismiss Adelson's case pursuant to Nevada's anti-SLAPP statute . . . on September 30, 2013."  (Dkt. No. 20 at 1.)  Adelson has not provided a counterstatement or otherwise disputed this fact; thus, the statement is "deemed to be admitted for purposes of [the plaintiffs'] motion."  Local Civ. R. 56.1(c).  That ends the matter.  Plaintiffs are entitled to compensatory damages and attorney's fees as a matter of law.

Adelson argues that summary judgment is premature because Plaintiffs have failed to establish the existence of diversity jurisdiction.  (Dkt. No. 24 at 18–19.)  Although the complaint properly alleges the citizenship of the Council and Stanley (*see* Compl. ¶¶ 4–5), Adelson contends that at the summary judgment stage, Plaintiffs "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted).  Accordingly, Plaintiffs have provided a declaration that establishes the citizenship of both the Council and Stanley.  (*See* Dkt. No. 26 at 1.)  This evidence comports with the requirements of *Lujan*; thus, Plaintiffs have met their burden to establish federal jurisdiction.

It is also relevant that Adelson does not contest the citizenship of either the Council or Stanley.  (*See* Dkt. No. 24 at 13–14.)  As a general matter, inferences about the "abandonment of some claims or defenses" are "proper" at the summary judgment stage if the inferences "may be fairly drawn from the papers and circumstances viewed as a whole."  *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).  Here, Adelson's decision not to oppose Plaintiffs' allegations about their citizenship strongly suggests that there is no factual disagreement on the point.  And in the absence of a genuine dispute about Plaintiffs' citizenship, summary judgment under Rule 56 is appropriate.  Thus, summary judgment is granted for Plaintiffs on the issue of Adelson's liability for compensatory damages and attorney's fees.

Summary judgment, however, is premature on the issue of liability for punitive damages. In order to make out a claim for punitive damages, Plaintiffs must show that Adelson acted with oppression, fraud, or malice.  *See* Nev. Rev. Stat. § 42.005(1).  The resolution of this question of fact must await, at minimum, a responsive pleading from Adelson.  Thus, summary judgment is denied on the issue of Adelson's liability for punitive damages.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is DENIED.  Defendant's special motion to dismiss under the Nevada anti-SLAPP statute is DENIED.  Plaintiffs' motion for summary judgment is GRANTED in part — on the issue of liability for compensatory damages and attorney's fees — and DENIED in part — on the issue of liability for punitive damages.

The parties are directed to confer regarding further proceedings and to submit a joint letter with their proposals within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motions at Docket Numbers 16, 19, and 27.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge