UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL JEWISH DEMOCRATIC
COUNCIL, MARC R. STANLEY, and DAVID
HARRIS,

                               Plaintiffs,

        *-against-*

SHELDON G. ADELSON,

                             Defendant.

Case No. 1:18-cv-8787

**PLAINTIFFS' COMBINED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
*Attorneys for Plaintiffs*

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ..................................................................................ii-iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ....................................................................................................... 1

I.     ADELSON'S SPECIAL MOTION TO DISMISS SHOULD BE DENIED
BECAUSE NO SUCH MOTION IS PERMISSIBLE IN THIS ACTION............. 1

     A.     No Anti-SLAPP Motion Is Available Against a "Separate Action"
Under Nev. Rev. Stat. § 41.670(1)(c) ........................................................ 1

     B.     Alternatively, This Suit Is Not "Based On" Any
Communication by Adelson ....................................................................... 3

II.     EVEN IF A SPECIAL MOTION WERE PERMISSIBLE,
ADELSON'S  WOULD FAIL............................................................................ 3

     A.     Adelson's Anti-SLAPP Motion Is Precluded by Law of the Case ............. 3

     B.     Adelson's Assertion that His Prior Lawsuit Was a Good-Faith
Communication Is Still Wrong, and His Motion Thus Fails
at Step One of the SLAPP Analysis............................................................ 4

          1.     Adelson Has Not Produced Any Evidence Supporting
the Truthfulness of His 2012 Complaint Against Plaintiffs............ 5

          2.     The Only Document Submitted by Adelson Is Contradicted
by His Own Deposition Testimony................................................. 6

     C.     Even if Adelson Could Meet His Step-One Burden,
His Motion Would  Fail at Step Two......................................................... 7

CONCLUSION.................................................................................................... 11

i

# TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ...................... 5

*Arizona v. California*,
  460 U.S. 605 (1983) ........................................................................................... 3

*Coker v. Sassone*,
  432 P.3d 746 (Nev. 2019) ............................................................................... 4, 6

*Delucchi v. Songer*,
  396 P.3d 826 (Nev. 2017) .................................................................................. 7

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ......................................................................................... 11

*Georges Tannoury, MD, PC v. Stacey Kokopelli Med., P.C.*,
  No. 58321, 2014 WL 1270582 (Nev. Mar. 26, 2014) ..................................... 11

*Katz v. Incline Vill. Gen. Improvement Dist.*,
  452 P. 3d 411, 2019 WL 6247743 (Nev. 2019) ................................................ 8

*Law Offices of Barry Levinson, P.C. v. Milko*,
  184 P.3d 378 (Nev. 2008) .................................................................................. 2

*NJDC v. Adelson*,
  --- F. Supp. 3d ----, 2019 WL 4805719 (S.D.N.Y. Sept. 30, 2019) .......................... *passim*

*NJDC v. Adelson*,
  No. 18 Civ. 8787, 2019 WL 6895435 (S.D.N.Y. Dec. 18, 2019) ........................ 3, 4, 8, 10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2015) ......................................................................................... 10

*Shapiro v. Welt*,
  389 P.3d 262 (Nev. 2017) .................................................................................. 4

*Soukup v. Law Offices of Herbert Hafif*,
  139 P.3d 30 (Cal. 2006) ..................................................................................... 9

*State v. Quinn*,
  30 P.3d 1117 (Nev. 2001) .................................................................................. 2

*Stubbs v. Strickland*,
  297 P.3d 326 (Nev. 2013) ............................................................................... 1, 2

ii

*United States v. Yonkers Bd. of Educ.*,
    856 F.2d 7 (2d Cir. 1988) ................................................................................ 4

**Statutes and Rules**

Cal. Code of Civ. P. § 425.18 ................................................................................ 9

Fed. R. Civ. P. 11 ................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 11

Nev. Rev. Stat. § 233B.0375 .................................................................................. 7

Nev. Rev. Stat. § 41.637 ........................................................................................ 4

Nev. Rev. Stat. § 41.650 ........................................................................................ 3

Nev. Rev. Stat. § 41.660 ............................................................................... *passim*

Nev. Rev. Stat. § 41.670 ............................................................................... 1, 2, 9

## PRELIMINARY STATEMENT

It is by now apparent that Defendant Sheldon G. Adelson ("Adelson") will not squander any opportunity to use vexatious motion practice as a weapon to delay Plaintiffs' efforts to obtain the remedy Nevada law expressly provides—no matter the burdens this tactic places on the Court and the enormous waste of judicial resources it causes. Adelson's latest motion to dismiss largely rehashes arguments this Court has already rejected—repeatedly—and continues to advocate tortured, illogical interpretations of unambiguous Nevada statutes that clearly entitle Plaintiffs to relief. The Court should reject Adelson's new effort, just as it has his previous ones, and deny his motions in all respects.

## ARGUMENT

## I. ADELSON'S SPECIAL MOTION TO DISMISS SHOULD BE DENIED BECAUSE NO SUCH MOTION IS PERMISSIBLE IN THIS ACTION

### A. No Anti-SLAPP Motion Is Available Against a "Separate Action" Under Nev. Rev. Stat. § 41.670(1)(c)

This action arises under Nev. Rev. Stat. § 41.670(1)(c), which expressly authorizes a party who successfully obtains dismissal of a SLAPP to bring "a separate action" for damages. The Nevada Supreme Court has characterized the statute as "plain and unambiguous," observing that it "conditions a defendant's ability to bring a separate action for damages and attorney fees in response to a SLAPP suit on the district court's grant of a special motion to dismiss." *Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013). As this Court correctly held, "the text of the statute is plain: the one and only legal precondition to a defendant's ability to bring a separate action is the district court's grant of a special motion to dismiss." *NJDC v. Adelson ("NJDC I")*, --- F. Supp. 3d ----, 2019 WL 4805719, at *7 (S.D.N.Y. Sept. 30, 2019).

In light of the unique structure of this statute, this Court need not reach Adelson's arguments concerning his burden of proof on the special motion. That is because a "separate

1

action" under Section 41.670(1)(c) is not subject to an anti-SLAPP motion at all. *See id.* at *11 ("It would be peculiar, to say the least, if Nevada wrote its anti-SLAPP statute to shield litigants who file SLAPPs from liability in a subsequent anti-SLAPP damages action."). Under Adelson's reading, a SLAPP defendant who obtains dismissal *based on* Nevada's anti-SLAPP law could then be barred from obtaining a remedy derived from the law because of an immunity created by *that same law*. Reading the statute to nullify itself in this way would violate the "tenet of statutory construction requir[ing] statutes to be construed as a whole and not be read in a way that would render words or phrases superfluous or make a provision nugatory." *Law Offices of Barry Levinson, P.C. v. Milko*, 184 P.3d 378, 386 (Nev. 2008) (internal quotation marks omitted).

Reading the statute to permit an anti-SLAPP motion against a statutory "separate action" would also lead to absurd results. By their nature, SLAPPs like the one Adelson filed against Plaintiff are "meritless lawsuit[s] that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights." *Stubbs*, 297 P.3d at 329. As this Court observed, "[t]he twin aims of the statute are to protect defendants from litigation costs and to deter plaintiffs from bringing SLAPP claims." *NJDC I*, 2019 WL 4805719, at *11. Yet under Adelson's reading, a SLAPP plaintiff could instead wield the statute to *avoid* the deterrent consequences imposed by the statute and to deprive SLAPP victims of the full range of remedies available to them. Such a counter-intuitive construction is unsupportable and fails to interpret the statute "in line with what reason and public policy would indicate the legislature intended, and [to] avoid absurd results." *State v. Quinn*, 30 P.3d 1117, 1120 (Nev. 2001) (quotation omitted). The apt image is of two mirrors facing one another providing an infinity of images, in this case, lawsuits.

2

**B.    Alternatively, This Suit Is Not "Based On" Any Communication by Adelson**

In the alternative, the Court can reject Adelson's special motion on the ground that this action does not fall within the scope of the immunity prescribed by Nev. Rev. Stat. § 41.650, which applies only to "any civil action for claims based upon" a good-faith communication. Here, the content of Adelson's initial SLAPP complaint is irrelevant to Plaintiffs' cause of action. The claim pled in the Second Amended Complaint simply recites Plaintiffs' satisfaction of the sole statutory element: they previously prevailed on a special motion to dismiss under Section 41.660. Second Am. Compl. ¶ 57. Because this suit is not "based upon" the content of Adelson's speech, it is not subject to the anti-SLAPP law.

## II.    EVEN IF A SPECIAL MOTION WERE PERMISSIBLE, ADELSON'S WOULD FAIL

### A.    Adelson's Anti-SLAPP Motion Is Precluded by Law of the Case

The Court has now ruled twice—both in denying Adelson's original motion to dismiss and in denying his motion for reconsideration—that Adelson failed to establish that his prior defamation lawsuit was a "good faith communication" under Nevada law. *NJDC I*, 2019 WL 4805719, at *11; *NJDC v. Adelson ("NJDC II")*, No. 18 Civ. 8787, 2019 WL 6895435, at *1 & n.2 (S.D.N.Y. Dec. 18, 2019). Nonetheless, Adelson now brazenly seeks to relitigate that issue—"incorporat[ing] by reference all of the arguments he raised in his prior briefing," ECF No. 70 at 1—because he "continues to disagree with" the Court's decisions, *id.* at 2. These improper arguments contravene the doctrine of law of the case, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Adelson fails to identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" as would be required to deviate from the

law of the case. *United States v. Yonkers Bd. of Educ.*, 856 F.2d 7, 11 (2d Cir. 1988) (internal

quotation marks and citations omitted). His motion should be denied on that basis alone.

> **B.**    **Adelson's Assertion that His Prior Lawsuit Was a Good-Faith Communication Is Still Wrong, and His Motion Thus Fails at Step One of the SLAPP Analysis**

Nevada law is clear: it is the anti-SLAPP movant's initial burden to show that "the claim

is based upon a good faith communication in furtherance of the right to petition or the right to

free speech in direct connection with an issue of public concern," Nev. Rev. Stat. §

41.660(3)(a)—meaning the movant must show, including by "evidence, written or oral, by

witnesses or affidavits," *id.* § 41.660(3)(d), that the alleged SLAPP is based upon a

communication "which is truthful or is made without knowledge of its falsehood," *id.* § 41.637;

*see Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) ("[N]o communication falls within the

purview of Nev. Rev. Stat. 41.660 unless it is truthful or is made without knowledge of its

falsehood."). Accordingly, were he entitled to file a special motion to dismiss at all (and he is

not), Adelson would be required to "provide evidence persuading this court" that his initial suit

was truthful or filed without knowledge of its falsity. *Coker v. Sassone*, 432 P.3d 746, 750 (Nev.

2019).

The Court denied Adelson's previous motions to dismiss and for reconsideration because

he "submitted no evidence whatsoever on the issue." *NJDC II*, 2019 WL 6895435, at *1.

Adelson now takes another bite at the preponderance apple, submitting the same bare lawyer

declaration this Court discounted on reconsideration of his previous motions. The second

attempt fares no better. Adelson submits no evidence supporting the truthfulness of his

allegations, and his own deposition testimony demonstrates that he did not file his defamation

suit against Plaintiffs in good faith.

## 1.    Adelson Has Not Produced Any Evidence Supporting the Truthfulness of His 2012 Complaint Against Plaintiffs

To clear his initial burden, Adelson must submit evidence that the allegations in the complaint in his prior defamation suit—allegations that Plaintiffs made false and defamatory statements—constituted a good-faith communication. The declaration makes only bare statements that Adelson's 2012 complaint complied with Federal Rule of Civil Procedure 11 because the "factual contentions [contained in it had] evidentiary support" and the "factual allegations in the Complaint were 'truthful or . . . made without knowledge of its falsehood.'" ECF No. 70-1 at 2–3. But these conclusory assertions are no substitute for actual evidentiary support for the truthfulness of the specific allegations in Adelson's 2012 complaint.

In granting Plaintiffs' special motion to dismiss Adelson's prior lawsuit, this Court methodically found that the statements at the heart of the Underlying Complaint were not false or actionable. The Court considered three communications: (i) Plaintiffs' July 3, 2012 statement that "reports [had] surfaced" that Adelson had personally approved of prostitution; (ii) Plaintiffs' comments about Adelson's "dirty" and "tainted" money; and (iii) Plaintiffs' July 11, 2012 press release. Adelson's complaint alleged that each of these statements was false and defamatory. Considering each in turn, the Court determined that the statements were not false or defamatory.

First, the Court found that "the Petition quote[d] from, and hyperlink[ed] to, a news report that accurately describe[d] and quote[d] from" a judicial document, and thus "the Petition's statements" about the reports were "non-actionable as a matter of law." *Adelson v. Harris*, 973 F. Supp. 2d 467, 483, 487 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017). Second, the Court concluded that Plaintiff's statements that Adelson's money was "dirty" or "tainted" were "constitutionally protected statements" that were "incapable of being proven true or false." *Id.* at 487. Finally, the Court determined that Plaintiff's press release "did not contain

5

any false statement of fact . . . ." *Id.* at 503 n.25.  In other words, it was clear to this Court from the face of Plaintiffs' statements—and so it would have been obvious to Adelson and his lawyers—that Plaintiffs' statements were truthful and could not support a defamation claim.

Based on those findings, it is now settled that Adelson's allegations were made in error. Adelson must now produce evidence demonstrating that his error was made in good faith.  But in the seven years since Adelson commenced his lawsuit, he has not produced any evidence supporting the truthfulness of his allegations that Plaintiffs made false statements, because no such evidence exists.  Nor has he submitted a declaration setting forth the good-faith basis for any purported belief that the allegations were truthful or made without knowledge of falsehood, because the allegations were false—and Adelson knew they were false when he made them. Adelson has not proffered any evidence that his 2012 complaint was "truthful or . . . made without knowledge of its falsehood[,]" so it does not "fall[] within the purview of [Nev. Rev. Stat. §] 41.660."  *Coker*, 432 P.3d at 750 (internal quotation marks omitted) (affirming the denial of a special motion to dismiss where movant submitted a declaration but did not provide evidence persuading the court that at the time he made the allegedly false statements, he believed they were true).

## 2.    The Only Document Submitted by Adelson Is Contradicted by His Own Deposition Testimony

Even if the Court were to consider the lawyer declaration as evidence of Adelson's good faith—and it should not—Adelson's own deposition testimony demonstrates that his suit against Plaintiffs was not brought in good faith.  Adelson's 2012 complaint demanded damages in the amount of $60 million and a retraction of Plaintiffs' statements.  But Adelson confirmed at his deposition that he "wasn't looking for money in this litigation."  Jondahl Decl., Ex. 1 (Adelson Dep.) at 76:10–16.  Dissatisfied with Plaintiffs' July 11, 2012 press release and their decision to

6

take down their petition, Adelson sued Plaintiffs not to obtain compensation for any damages he

suffered, but for the alternative purpose of coercing an apology. *Id.* at 80:9–13 (stating that he

sued to "get an apology and to get a statement from them that they weren't going to repeat it");

*see also id.* at 108:1 ("If they [had apologized], I wouldn't have sued them."); *id.* at 118:12–14

("Q. And you sued them for $60 million to get your apology; is that correct? A. I guess I did.").

Adelson thus admitted under oath that he did not seek $60 million in damages in good faith. *Id.*

120:6–10 ("Q. Right. But you didn't ask them for an apology in the lawsuit and sue for a dollar;

you sued for 60 million, correct? A. Correct. Correct. Not that I ever thought that I would get

it.").

Faced with this testimony, and in the absence of any actual evidence from Adelson, no

trier of fact could determine that it is more probable than not that Adelson's defamation suit was

a good-faith communication. *See* Nev. Rev. Stat. § 233B.0375 (defining "preponderance of the

evidence"). Adelson's defamation lawsuit was not a good-faith attempt to seek judicial relief, it

was a cynical attempt to obtain a political and public relations outcome—forcing Plaintiffs to

apologize and retreat with their tails between their legs—that could never actually have been

obtained by litigation. Adelson therefore cannot meet his initial burden of demonstrating, by a

preponderance of the evidence, that the 2012 lawsuit was a good faith communication under the

Nevada anti-SLAPP law. *Id.* at § 41.660(3)(a).

### C.    Even if Adelson Could Meet His Step-One Burden, His Motion Would Fail at Step Two

Even if Adelson were somehow correct that he met his initial burden under

§ 41.660(3)(a), his special motion to dismiss would still be unavailing. Rather, that showing

would merely shift the burden "to the plaintiffs to show a probability of prevailing on their

claims." *Delucchi v. Songer*, 396 P.3d 826, 829 (Nev. 2017); Nev. Rev. Stat. § 41.660(3)(b) ("If

7

the court determines that the moving party has met the burden" of establishing a protected communication, the court shall then "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim"). As the Court has already held, Plaintiffs not only established a probability of prevailing, they conclusively proved that Adelson is liable, because "the sole precondition to a defendant's entitlement to compensatory damages and attorney's fees is the district court's grant of a special motion to dismiss." *NJDC I*, 2019 WL 4805719, at *12 (granting partial summary judgment). Accordingly, *even if* Adelson's initial SLAPP complaint qualified as a "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" under Nevada law, his motion still could not be granted. The Court already held as much in its reconsideration order, and that holding is law of the case. *NJDC II*, 2019 WL 6895435, at *1 n.2.

Adelson's attempts to maneuver around this obvious defect in his motion fail. His assertion that the Court's ruling would render the anti-SLAPP law a nullity by denying its protections to discredited SLAPP plaintiffs is ridiculous. There is nothing illogical about a statute that disqualifies SLAPP lawsuits from receiving the legal protections afforded to good-faith exercises of free speech rights. "Nevada's anti-SLAPP statutes provide a procedural mechanism for parties to seek dismissal of meritless lawsuits that chill free speech before incurring the costs of litigation." *Katz v. Incline Vill. Gen. Improvement Dist.*, 452 P. 3d 411 (Table), 2019 WL 6247743, at *2 (Nev. 2019) (unpublished) (quotation marks omitted). Once a SLAPP victim has demonstrated that he is entitled to dismissal under the Nevada law, there is no room for further inquiry into the SLAPP perpetrator's "good faith," because a "good faith" SLAPP is an oxymoron.

8

Adelson's reliance on California precedent permitting special motions to strike "SLAPPback" claims is also misplaced.  Unlike the Nevada statute, California's law does not create a freestanding cause of action based solely on the dismissal of a prior SLAPP; rather, California defines the term "SLAPPback" to existing common-law causes of action arising from a previous SLAPP.  *Compare* Nev. Rev. Stat. § 41.670(1)(c) (providing that "[t]he person against whom the [SLAPP] action is brought may bring a separate action" to recover damages, attorneys' fees, and costs), *with* Cal. Code of Civ. P. § 425.18(b)(1) (defining SLAPPback to mean "any cause of action for malicious prosecution or abuse of process arising from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike").  Thus, at step two in the California SLAPP inquiry, a SLAPPback plaintiff can defeat a special anti-SLAPP motion by showing that her malicious prosecution or abuse of process claim "is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30, 51 (Cal. 2006) (quotation marks omitted).  But because the common-law SLAPPback cause of action will require a showing of ulterior purpose or subjective malice, *see id.* at 51–52, a SLAPPback defendant can win a special motion under proper circumstances even though his original filing was a SLAPP.

By contrast, in Nevada, a "SLAPPback" plaintiff is not required to prove *any* common-law elements to prevail in a "separate action" under § 41.670(1)(c).  Rather, "the sole precondition to a defendant's entitlement to compensatory damages and attorney's fees is the district court's grant of a special motion to dismiss."  *NJDC I*, 2019 WL 4805719, at *12.  Thus, at step two in the SLAPP inquiry, *any* Nevada SLAPPback plaintiff who has previously obtained dismissal of a SLAPP via a special motion to dismiss will perforce be able to "demonstrate[]

with prima facie evidence a probability of prevailing on the claim."  Nev. Rev. Stat. §
41.660(3)(b).

It is Adelson, not Plaintiffs, who seeks to rewrite the statute in his favor, contending that
Plaintiffs' complaint is subject to dismissal notwithstanding their settled entitlement to summary
judgment.  Had the Nevada Legislature wished to provide SLAPP perpetrators like Adelson with
procedural protections against liability, it could have required SLAPPback plaintiffs to show
subjective bad faith (as California does), or objective baselessness (as Adelson advocates).
Instead, Nevada enacted a broad right of action whose "sole precondition" is the prior grant of a
special motion to dismiss.  *NJDC I*, 2019 WL 4805719, at *1.  All proper SLAPPback actions
under Nevada law will thus satisfy step two of the SLAPP inquiry, rendering such actions
categorically insusceptible to special motions to dismiss.[1]

Finally, Adelson's assertion that Plaintiffs have failed to establish damages is both
incorrect and irrelevant.  Plaintiffs suffered significant pecuniary and emotional damages as a
result of Adelson's abusive lawsuit.  But the precise measure of Plaintiffs' damages is not before
the Court, because at step two of the SLAPP analysis, Plaintiffs' burden is solely to
"demonstrate[e] with prima facie evidence a probability of prevailing on the claim."  Nev. Rev.
Stat. § 41.660(3)(b).  "Prevailing" on Plaintiffs' cause of action only requires showing that
Adelson's 2012 complaint was dismissed as a SLAPP, not the extent of the injuries Plaintiffs

---

[1] Adelson is wrong to suggest that this interpretation of the statute—the only one consonant with its plain text—runs afoul of the Constitution under the *Noerr-Pennington* doctrine.  As the Court correctly explained in its reconsideration order:

> The "objective baselessness" standard has no application when the "text is patently clear."  And here, the text is patently clear: it imposes "one and only one constraint on district courts' discretion" to award anti-SLAPP damages.  Thus, it would make "little sense" to import the "objective baselessness" standard into the anti-SLAPP statute.

*NJDC II*, 2019 WL 6895435, at *2 (citations omitted) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556, 553 (2015)).

suffered due to his conduct.  *NJDC I*, 2019 WL 4805719, at *7.  Even if Plaintiffs proved only

the bare fact that Adelson filed a SLAPP, they would at the very least be entitled to nominal

damages.  *See Georges Tannoury, MD, PC v. Stacey Kokopelli Med., P.C.*, No. 58321, 2014 WL

1270582, at *1 n.2 (Nev. Mar. 26, 2014) (unpublished).  That alone suffices to establish

Plaintiffs' probability of prevailing.  *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (holding

that a plaintiff who wins only nominal damages qualifies as a prevailing party).  Because

Plaintiffs have already won summary judgment as to compensatory damages and attorneys' fees,

they are indisputably likely to prevail on the merits of their claim.  Adelson's motion should

therefore be denied.[2]

## CONCLUSION

For the foregoing reasons, Adelson's motions to dismiss should be denied.


Dated: January 17, 2020
       New York, New York

                        EMERY CELLI BRINCKERHOFF
                        & ABADY LLP

                                 /s/
                        Richard D. Emery
                        O. Andrew F. Wilson
                        David A. Lebowitz
                        Andrew Jondahl
                        600 Fifth Ave., 10th Floor
                        New York, NY 10020
                        (212) 763-5000

                        *Attorneys for Plaintiffs*

---

[2] Adelson's memorandum of law incorporates by reference his prior arguments for dismissal under Rule 12(b)(6). The Court's previous rejection of those arguments, *see NJDC I*, 2019 WL 480719, at *2–*10, was entirely correct, and there is no basis to revisit the Court's conclusions here.