IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL JEWISH DEMOCRATIC COUNCIL, MARC R. STANLEY, and DAVID HARRIS,<br><br>*Plaintiffs*,<br><br>v.<br><br>SHELDON G. ADELSON,<br><br>*Defendant*. | Case No. 1:18-cv-8787 |

**DEFENDANT SHELDON G. ADELSON'S COMBINED REPLY IN SUPPORT OF HIS RULE 12(B)(6) AND HIS SPECIAL MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

Michael A. Carvin
(*pro hac vice forthcoming*)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com

Lee A. Armstrong
   *Counsel of Record*
James M. Gross
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
laarmstrong@jonesday.com
jgross@jonesday.com

*Counsel for Sheldon G. Adelson*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

    A.   Mr. Adelson Has Satisfied His Initial Burden Under Nevada's Anti-SLAPP
          Statute ................................................................................................................. 2

    B.   Plaintiffs' Remaining Arguments Are Meritless ............................................... 7

CONCLUSION ............................................................................................................................ 10

**PRELIMINARY STATEMENT**

To date, Plaintiffs National Jewish Democratic Council ("NJDC") and Marc Stanley have filed three versions of their complaint (ECF 1, 15, 63) (the last of which added David Harris as a plaintiff), six memoranda of law (ECF 18, 21, 25, 29, 55, 72), and a Rule 56.1 Statement (ECF 20). Nowhere in any of those 10 filings do Plaintiffs allege that Mr. Adelson's underlying lawsuit was brought with knowledge of falsity. In fact, even setting aside Plaintiffs' failure to allege knowledge of falsity (a binding judicial admission), the record now contains an affidavit from Mr. Adelson's counsel in the underlying lawsuit which affirmatively establishes that "the factual allegations in the Complaint were 'truthful or … made without knowledge of its falsehood." Declaration of L. Lin Wood, ECF 70-1 ¶ 3. It is therefore not only undisputed but also affirmatively established that under Nevada law, Mr. Adelson's underlying lawsuit constitutes a "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS § 41.650. He is thus "immune from *any* civil action"—including this one—"for claims based upon the communication." *Id.* (emphasis added).

Unable to dispute that Mr. Adelson's underlying lawsuit plainly fits within the statutory definition of a "good faith communication" under Nevada law, Plaintiffs instead argue that (i) Nevada's anti-SLAPP statute does not apply to SLAPPback suits like this one, and that (ii) even if the anti-SLAPP statute did apply, Plaintiffs can overcome that motion. Those arguments are wrong. This Court should grant Mr. Adelson's special motion to dismiss and award him his reasonable attorney's fees and costs incurred in defending this lawsuit pursuant to NRS § 41.670(1)(a).

Finally, as noted in Mr. Adelson's opening brief (at 6), Mr. Adelson also renews all of the arguments in his Rule 12(b)(6) motion to dismiss the amended complaint so as to ensure that those arguments apply to Mr. Harris's newly added claim and are preserved for appeal against all Plaintiffs.

1

**A.      Mr. Adelson Has Satisfied His Initial Burden Under Nevada's Anti-SLAPP Statute.**

Mr. Adelson's opening brief explained (at 1–2) that he satisfied his initial burden of "establish[ing], by a preponderance of the evidence, that [Plaintiffs' SLAPPback] claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" for two separate reasons.

**1.**      First, Mr. Adelson showed (at 1–2) that, as in *Adelson I*, his underlying lawsuit was a "good faith communication" "as a matter of law … because Plaintiff[s] failed to plead that [Mr. Adelson] acted with knowledge of falsehood." *Adelson v. Harris*, 973 F. Supp. 2d 467, 501–02 (S.D.N.Y. 2013). Even this Court has acknowledged that "Plaintiffs in this case also failed to plead that the underlying conduct—Adelson's defamation lawsuit—was brought with knowledge of falsity." ECF 62 at 2. This Court nonetheless denied Mr. Adelson's anti-SLAPP motion to dismiss the Amended Complaint, explaining (for the first time) in its order denying Mr. Adelson's motion for reconsideration that beginning in 2013, Nevada amended its anti-SLAPP statute by implementing a "burden-shifting anti-SLAPP framework" that heightened Mr. Adelson's initial burden.

That is incorrect. Under the current version of Nevada's anti-SLAPP statute, the burden on anti-SLAPP movants like Mr. Adelson is *exactly the same* as it was when this Court decided *Adelson I*. The statutory history of Nevada's anti-SLAPP statue confirms this. When Mr. Adelson filed his defamation lawsuit in 2012, the Nevada anti-SLAPP statute provided that "[i]f a special motion to dismiss is filed … the court shall … [t]reat the motion as a motion for summary judgment." NRS § 41.660(3)(a) (2013). Accordingly, when this Court decided *Adelson I*, the "party mov[ing] for a special motion to dismiss under Nevada's anti-SLAPP statute … b[ore] the initial burden of production and persuasion." *John v. Douglas Cty. Sch. Dist.*, 219 P.3d 1276, 1282 (Nev. 2009). As on any motion for summary judgment, "[t]his mean[t] the moving party must first make a threshold showing that the lawsuit is based on 'good faith communications made in furtherance

2

of the right to petition." *Id.*[1]

While the Nevada legislature amended this statute in 2013, it left the anti-SLAPP movant's initial burden untouched:  the movant was still required to "establish[], by a preponderance of the evidence, that the claim is based upon a good faith communication," just as before.  NRS § 41.660(3)(a) (2015).  What the statute *did* change was the *plaintiff's* burden in responding to an anti-SLAPP motion to dismiss, requiring the plaintiff to "establish[] by *clear and convincing* evidence"—instead of only a preponderance of the evidence, as had been required previously under the summary judgment standard—"a probability of prevailing on the claim."  NRS § 41.660(3)(b) (2015).  Thus, while the 2013 amendment did render the anti-SLAPP statute different from a summary judgment motion, that is only because it heightened the *plaintiff's* burden of proof in *responding* to an anti-SLAPP motion, not Mr. Adelson's as the movant.

That amendment was short-lived, as Nevada again amended its anti-SLAPP statute in 2017 to "*decrease*[] the plaintiff's burden of proof from 'clear and convincing' to 'prima facie' evidence." *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019).  "As amended, the special motion to dismiss again functions like *a summary judgment motion* procedurally," *id.*—*i.e.*, exactly as it did at the time that this Court decided in *Adelson I* that an anti-SLAPP movant satisfies his initial burden of proof when the "Plaintiff failed to plead that Defendants acted with knowledge of falsehood."

In any event, even if Nevada's current anti-SLAPP statute somehow imposes a different burden of proof on Mr. Adelson than it did at the time of *Adelson I*—and it does not—binding Second Circuit precedent confirms that Plaintiffs' judicial admission satisfies that burden.  As the Second Circuit has explained, "[j]udicial admissions … are formal concessions in the pleadings …

---

[1] *See also Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 172 P.3d 131, 134 (Nev. 2007) (noting that Nevada "follow[s] the federal approach outlined in Celotex Corp. v. Catrett," 477 U.S. 317, 323 (1986); *i.e.*, the "party moving for summary judgment bears the initial burden of production to show the absence of a genuine issue of material fact").

3

that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (quoting 2 McCormick on Evid. § 254 (6th ed. 2006)). As such, "[a]dmissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record." *Id.*

Accordingly, because "Plaintiff[s] failed to plead that [Mr. Adelson] acted with knowledge of falsehood," and because "allegations in the Complaint are judicial admissions by which the Plaintiff is bound through the course of the proceeding," Plaintiffs' own pleadings confirm that Mr. Adelson's underlying lawsuit is a "good faith communication" protected by Nevada's anti-SLAPP statue. *Adelson I*, 973 F. Supp. 2d at 502 (internal quotation marks and alterations omitted).

**2.** Mr. Adelson also showed that even if Plaintiffs' judicial admissions are insufficient to meet his initial burden under Nevada's anti-SLAPP statute, the declaration from his counsel of record in the underlying lawsuit, Mr. L. Lin Wood, submitted in support of his motion plainly suffices. Opening Br. 2. Plaintiffs raise three responses, all of which are meritless.

**a.** Plaintiffs first claim that this Court cannot consider Mr. Wood's declaration (or Mr. Adelson's anti-SLAPP motion altogether) because they are barred by the "law of the case." Opp. Br. 3–4. That is incorrect. Most obviously, the only "law of case" is that Mr. Adelson needs to support his anti-SLAPP motion with some evidence, and cannot rely on an admission. The current motion is supported by such evidence—Mr. Wood's affidavit—so it fully *complies* with the law of case. It makes no sense to say that a prior ruling *requiring* such an affidavit somehow creates a rule *forbidding* such an affidavit. (Again, Plaintiffs dispute nothing in this affidavit).

Even if law of the case somehow now forbids what it previously required, it would not bar the motion to dismiss supported by the Wood affidavit. As the Second Circuit has explained, the law of the case doctrine does not apply "if a party did not, at the time of the purported waiver, have

4

both an opportunity and an incentive to raise it before the" court. *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002). Here, when Mr. Adelson moved to dismiss the amended complaint, he had no notice that unlike in *Adelson I* and contrary to Second Circuit precedent, this Court would require him to prove with extrinsic evidence an undisputed and judicially admitted fact, and therefore had no incentive to introduce Mr. Wood's declaration alongside that motion. Mr. Wood's declaration is therefore properly before this Court.

Regardless, it is "well settled that the 'law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. Cal. Prune & Apricot Grower*, 3 F.2d 896, 898 (2d Cir. 1924) (Hand, J.). Courts routinely "depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *Johnson v. Holder*, 564 F.3d 95, 99–100 (2d Cir. 2009). This is such a case. Given that Mr. Adelson had no notice that he would be required to submit extrinsic evidence to support his anti-SLAPP motion due to this Court's perceived change in Nevada law (evidence which he immediately submitted alongside his motion for reconsideration upon learning of this Court's rationale), it would inflict "manifest injustice" to now preclude him from introducing that evidence. That is particularly true in light of the liberties afforded to Plaintiffs in *Adelson I* (where this Court accepted their statutorily untimely anti-SLAPP motion) and this case (where this Court relied upon a declaration submitted alongside Plaintiffs' reply brief to award them partial summary judgment).

**b.** Plaintiffs next claim that Mr. Wood's affidavit should be discarded because this Court found in *Adelson I* "that the statements at the heart of the Underlying Complaint were not false or actionable." Opp. Br. 5. In other words, Plaintiffs claim that because this Court ultimately dismissed Mr. Adelson's defamation claims in his underlying suit, this somehow suggests that the

5

factual allegations in the Complaint were somehow knowingly false at the time he made them.

That argument ignores the plain text of NRS § 41.637, Mr. Wood's declaration, and common sense. Under Nevada law, a communication is made in "good faith" if it "is truthful *or is made without knowledge of its falsehood*." NRS § 41.637(4) (emphasis added). It is therefore irrelevant that this Court ultimately disagreed with and dismissed Mr. Adelson's claims on legal grounds giving extraordinary protection to defamatory statements (a decision, it is worth noting, that was only affirmed after the certification of "issue[s] of first impression" to the Nevada Supreme Court, *Adelson v. Harris*, 133 Nev. 512, 516 (Nev. 2017)). All that matters is that when Mr. Adelson brought his lawsuit, he did so "without knowledge of its falsehood." Plaintiffs' own pleadings and Mr. Wood's declaration confirm that Mr. Adelson satisfied that standard when he filed suit. *See also Century Sur. Co. v. Prince*, 782 F. App'x 553 (9th Cir. 2019) (signature on state court pleading, which was governed by Nevada's equivalent to Rule 11 of the Federal Rules of Civil procedure, sufficient to meet movant's initial burden under Nevada's anti-SLAPP statute).

**c.** Finally, Plaintiffs claim that Mr. Wood's declaration should not be considered because it is purportedly "contradicted by [Mr. Adelson's] own deposition testimony." Opp. 6–7.

That is both irrelevant and blatantly untrue. At the threshold, whatever Mr. Adelson's "subjective expectation[s] of success" were has no bearing on whether his lawsuit was a "good faith communication." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993). The Supreme Court has made this point explicitly: "We … hold that an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* Here, Mr. Adelson's underlying lawsuit (i) fits within at least one of the enumerated categories of protection under Nevada's definition of "good faith communication" and (ii) was "truthful or [was] made without knowledge of its falsehood." That is all that is required to establish a "good faith communication"

6

under Nevada law; Mr. Adelson's subjective expectation of success is irrelevant.[2]

In any event, even if Mr. Adelson's subjective views were relevant, Plaintiffs simply cherry-pick quotes from Mr. Adelson's deposition out of context, while entirely omitting his testimony as to the harm he actually suffered: the adverse impact of Plaintiffs' false and defamatory allegations on Mr. Adelson's ability to procure gaming licenses in new jurisdictions. As Mr. Adelson testified, that harm injured him to at least "the tune of $10 million and $50 million punitive damages":

> Q: Did you believe that you had been damaged to the tune of $10 million and $50 million punitive damages were appropriate in this matter?
>
> A: Yes.… And you must understand that it isn't just the current damages. It's the damages that I might suffer based upon new jurisdictions.… If I – if I was applying for a gaming license in another country, in Thailand, in South Korea, in Japan, in South America or anywhere. They – they would look at my record in where I was currently operating, and they would find the statements that were made about me regarding prostitution.

Gross Decl., Ex. A (Adelson Dep.) at 88:9–89:1. Plaintiffs are thus simply wrong when they say (at 7) that "Adelson's defamation lawsuit was not a good-faith attempt to seek judicial relief."

### B. Plaintiffs' Remaining Arguments Are Meritless

Plaintiffs next contend that even if Mr. Adelson's underlying lawsuit fits within the statutory definition of a "good faith communication" protected by Nevada's anti-SLAPP statute, Nevada does not protect that communication from suit because (1) a SLAPPback suit "is not subject to an anti-SLAPP motion at all," Opp. Br. 2; (2) the anti-SLAPP statute does not apply here because this SLAPPback "suit is not 'based on' any communication by Adelson," Opp. Br. 3; and (3) even if the anti-SLAPP statute applies, Plaintiffs could satisfy their burden of "show[ing] a probability of prevailing on their claims." Opp. Br. 7. All three of those arguments are wrong.

---

[2] *See also In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 339 (S.D.N.Y. 2019) (McMahon, C.J.) (Noerr-Pennington protects defendants from liability for petitioning a governmental entity even when they "ask[ed] for relief that may have been beyond the purview of the citizen petition process").

7

1.      Mr. Adelson showed that Nevada's anti-SLAPP statute applies to "*any* civil action for claims based upon" a "good faith communication," including good faith lawsuits that were themselves dismissed as SLAPPs.  NRS § 41.650 (emphasis added).  That is apparent from the plain text of the statute, standard canons of statutory construction, and the First Amendment.  Indeed, if Nevada's SLAPPback provision imposes liability upon filers of *all* lawsuits dismissed as SLAPPs (instead of only objectively baseless lawsuits), multiple portions of Nevada's anti-SLAPP statute would be rendered nullities and the statute would be unconstitutional.  Opening Br. 2–6.

Plaintiffs do not seriously engage with any of these points, instead regurgitating their claim that it would make no sense to both protect "good faith" lawsuits while simultaneously authorizing SLAPPback lawsuits to penalize such "good faith" lawsuits by imposing damages.  Mr. Adelson agrees.  But that supposed conflict exists only if the SLAPPback statute automatically penalizes *all* lawsuits, even those that are themselves "good faith communications."  The statute must be harmonized so as to avoid this supposed internal conflict, *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018), and the only way to render the statute a harmonious whole (and to comport with the First Amendment) is to interpret the SLAPPback statute as applying only to dismissed lawsuits that were objectively baseless and a sham.  Opening Br. 2–6.

Plaintiffs attempt to avoid the statutory and constitutional problems that would result from their proposed interpretation by claiming, without any citation, that *any* lawsuit dismissed as a SLAPP necessarily falls outside the protections afforded to "good faith communications" "because a 'good faith' SLAPP is an oxymoron." Opp. Br. 8.  That is plainly wrong.  The mere fact that a court ultimately deems a party's lawsuit to be barred pursuant to a state anti-SLAPP statute has no bearing on whether that lawsuit was based on knowingly false factual assertions or is otherwise a

8

"good faith communication," particularly when the case involves multiple issues of first impression (as *Adelson I* did). The Nevada statute contains no such exception for "good faith communications"—*i.e.*, those that are ultimately dismissed. Nor does the First Amendment. Indeed, to impose liability upon a party simply because he unsuccessfully petitioned the government in good faith is precisely what the *Noerr-Pennington* doctrine forbids.[3] Plaintiffs' own arguments thus confirm the constitutional problems presented by their proposed interpretation.

Finally, Plaintiffs claim that if the Nevada legislature had intended to import *Noerr-Pennington*'s "objective baselessness" standard into the statute, it could have done so explicitly. But *Noerr-Pennington* is rooted in the *Constitution* and therefore applies to *all* statutes, including those (like the Sherman Antitrust Act) which are entirely silent as to whether their provisions apply to "objectively baseless" statutes.[4] *See Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 101 (2d Cir. 1983) (because "the *Noerr-Pennington* doctrine is mandated by the first amendment, then the doctrine must also apply to [a state's] statute and common law"). If *Noerr-Pennington* mandates that an "objectively baseless" requirement must be read into statutes entirely silent on the matter, then that constitutional doctrine certainly applies to a state statute that expressly embodies *Noerr-Pennington*, as Nevada's anti-SLAPP statute does. Opening Br. 5–6. Indeed, Nevada adopted *Noerr-Pennington*-type protections in the statute explicitly—when it protected lawsuits,

---

[3] *E.g.*, *Prof'l Real Estate*, 508 U.S. at 60 n.5 ("[W]hen the … defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.").

[4] Plaintiffs cling to this Court's holding that, under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, "[t]he 'objective baselessness' standard has no application when the 'text is patently clear.'" ECF 62 at 2 (quoting 572 U.S. 545, 556 (2014)). That is incorrect. *Octane* held only whether limiting the word "exceptional" found in the Patent Act's fee-shifting provision to the *Noerr-Pennington* standard "finds no roots in the text of [that statutory provision], and it makes little sense in the context of determining whether a case is so 'exceptional' as to justify an award of attorney's fees in patent litigation." 572 U.S. at 556. Nowhere, however, did the Supreme Court hint that the *existence* of the *Noerr-Pennington* standard hinges on whether that doctrine is rooted in a particular statute. Rather, it reaffirmed that *Noerr-Pennington* applies to *all* statutes to ensure that they "avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances." *Id.*

9

including dismissed lawsuits, as "good faith communications" protected from "*any* civil action"—like Plaintiff's suit here. Thus, the Nevada statute *explicitly* protects all suits not based on knowingly false accusations, so it grants protections which exceed even the "common law" protections afforded in California (Opp. Br. 9). Plaintiffs cannot and have not attempted to satisfy this standard.

**2.** Plaintiffs also argue that their SLAPPback lawsuit is not "based upon" a good faith communication because the "content of Adelson's initial SLAPP complaint is irrelevant to Plaintiffs' cause of action." Opp. Br. 3. Not so. As even Plaintiffs acknowledge, their claim is predicated on the fact that Mr. Adelson filed a complaint that "was dismissed as a SLAPP." Opp. Br. 10. As Mr. Adelson has explained elsewhere, the filing of a federal lawsuit fits within all four categories of petitioning activities defined as "good faith communications" under Nevada's anti-SLAPP statute. *See* NRS § 41.637. Because the filing of the complaint itself is a "good faith communication," Plaintiffs' suit is plainly "based upon" that communication.

**3.** Finally, Plaintiffs claim, without any supporting evidence, that they are likely to prevail on their claim (and therefore could satisfy their own burden in responding to Mr. Adelson's anti-SLAPP motion) because, at a minimum, they will be entitled to at least nominal damages because of Mr. Adelson's underlying lawsuit. That is a non-sequitur. Plaintiffs here are not seeking nominal damages, but rather compensatory and punitive damages. Thus, Plaintiffs must introduce prima facie evidence establishing that any purported damages they suffered were actually caused by Mr. Adelson. Plaintiffs have not done so, and their claims must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Adelson's motion to dismiss. In the alternative, if the Court concludes that Nevada law governs Plaintiffs' claim, the court should grant the special motion to dismiss the complaint in accordance with Nevada's anti-SLAPP statute. The Court should also award Mr. Adelson his reasonable costs and attorney's fees.

| | |
|---|---|
| Dated:    January 24, 2020 | Respectfully submitted, |
| | /s/ Lee A. Armstrong |
| Michael A. Carvin | Lee A. Armstrong |
| (*pro hac vice forthcoming*) |    *Counsel of Record* |
| JONES DAY | James M. Gross |
| 51 Louisiana Avenue, NW | JONES DAY |
| Washington, DC 20001 | 250 Vesey Street |
| (202) 879-3939 | New York, NY 10281 |
| macarvin@jonesday.com | (212) 326-3939 |
| | laarmstrong@jonesday.com |
| | jgross@jonesday.com |

*Counsel for Defendant Sheldon G. Adelson*

11

## CERTIFICATE OF SERVICE

I certify that on January 24, 2020, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated:   January 24, 2020                                    /s/ Lee A. Armstrong
                                                             Lee A. Armstrong
                                                             *Counsel for Sheldon G. Adelson*